## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER NIEMCZYK,

     Plaintiff,

     v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

     Defendant.

CIVIL ACTION NO. 3:20-cv-01990

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Christopher Niemczyk, seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Carolyn W. Colvin, Acting Commissioner of Social Security, who had already been succeeded by Nancy Berryhill, Acting Commissioner of Social Security, at the time of filing. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On December 20, 2018, Niemczyk protectively filed a claim for disability insurance benefits, asserting a disability onset date of March 30, 2018. His claim was initially denied by state agency reviewers on March 28, 2019. The plaintiff then requested an administrative hearing.

A video hearing was subsequently held on January 3, 2020, before an administrative law judge, Jeremy G. Eldred (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Christine Ditrinco. The plaintiff was represented by a non-attorney representative at the hearing.

On January 24, 2020, the ALJ denied Niemczyk's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Niemczyk was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Niemczyk had not engaged in substantial gainful activity since his alleged disability onset date. At step two, the ALJ found that Niemczyk had the severe impairments of: degenerative changes of the right hip (status post right

hip arthroscopy with labral repair and femoral osteoplasty), degenerative changes of the lumbar spine, degenerative changes of the thoracic spine, osteoarthritis of the cervical spine, and obesity. At step three, the ALJ found that Niemczyk did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Niemczyk's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Niemczyk had the RFC to perform the full range of "light work" as defined in 20 C.F.R. § 404.1567(b).[2]

In making these factual findings regarding Niemczyk's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Niemczyk was unable to perform his past relevant work as actually and generally performed.

At step five, the ALJ concluded that Niemczyk was capable of performing other jobs that exist in significant numbers in the national economy. Based on his age, education, work experience, and RFC, the ALJ concluded that the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, directed a conclusion of "not disabled." *See* 20 C.F.R. pt. 404, subpt. P, app.2, R. 202.21. Based on this finding, the ALJ concluded that Niemczyk was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on September 4, 2020, making the ALJ's January 2020 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on October 29,

2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Niemczyk asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ found his mental impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of state agency medical and psychological consultants; and (3) the ALJ failed to properly evaluate medical opinions

by a treating psychiatrist and a treating orthopedic surgeon.

### A. Step Two Determination

The plaintiff contends that the ALJ erred in finding that Niemczyk did not have a severe mental impairment.

At step two, the ALJ noted that Niemczyk had testified at his hearing that he was limited by post-traumatic stress disorder ("PTSD"), but Niemczyk's medical records included a "convincing explanation" why a PTSD diagnosis was not justified. The ALJ nevertheless acknowledged that there were other mental health diagnoses in the record, such as adjustment disorder with mixed features, depressive disorder, and other mental disorders. Ultimately, however, the ALJ found that, based on mental status examination findings in the record, Niemczyk's mental impairments resulted in no more than mild limitations in any of the four broad areas of mental functioning, and thus he did not have a *severe* mental impairment. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). (Tr. 18–19.)

But notwithstanding the ALJ's finding with respect to the severity of the plaintiff's mental impairments, the ALJ found that Niemczyk had several other severe impairments: degenerative changes of the right hip (status post right hip arthroscopy with labral repair and femoral osteoplasty), degenerative changes of the lumbar spine, degenerative changes of the thoracic spine, osteoarthritis of the cervical spine, and obesity. The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-

step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Niemczyk's favor at step two, finding that he had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of Niemczyk's mental impairments at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

## B. Evaluation of Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of

record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for

benefits in December 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan.

18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion

or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 416.920c(c)(1) (supportability), and *id.* § 416.920c(c)(2) (consistency), *with id.* § 416.927(c)(3) (supportability), and *id.* § 416.927(c)(4) (consistency).[3] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. Prior Administrative Findings

The ALJ considered the prior administrative findings in this case, finding portions of them unpersuasive. (Tr. 19, 22–23.)

#### a. State Agency Psychological Consultant

The prior administrative findings included the opinions of a state agency psychological consultant, James Vizza, Psy.D., who, in considering the broader areas of mental functioning, had found the claimant subject to moderate limitations in the area of interacting with others, but only mild limitations in the areas of (a) understanding, remembering, or applying information, (b) concentrating, persisting, or maintaining pace, and (c) adapting or managing oneself. In considering mental functional limitations, Dr. Vizza had found the claimant subject

to moderate limitations in his ability to interact appropriately with the general public, his ability to accept instructions and respond appropriately to criticism from supervisors, and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Vizza had found Niemczyk capable of working within a work schedule and at a consistent pace, making simple decisions, carrying out very short and simple instructions, maintaining regular and punctual attendance, asking simple questions and accepting instruction, maintaining socially appropriate behavior, adapting to ordinary change in routine, and meeting basic mental demands on a sustained basis despite the limitations resulting from his mental impairment. (Tr. 53–54, 57–58.)

Upon review of Dr. Vizza's opinions, the ALJ found them unpersuasive because they were "not supported by all the evidence now in the record, including the recent evidence regarding the claimant's activities and the claimant's testimony about his social interactions," and because "these opinions are inconsistent with the record as a whole." (Tr. 19.) In particular, the ALJ noted that Vizza had

> found the claimant only mildly limited in the B criteria,
> with the exception of moderate limitations for

> interaction with others. The claimant also indicated during his testimony that his primary mental health-related problem is difficulty getting along with other people. During the period at issue, the claimant has been living with his parents, spends a substantial amount of time taking his children to their activities and events, made 25 gallons of cider with help from friends, and went antelope hunting in Montana with a friend. The claimant testified that he gets together on a weekly basis with a group of friends to have dinner and smoke cigars. The medical evidence also shows that the claimant has gone out of his way to make friends with other people who were involved in the war-related events he experienced. In sum, I find the claimant has only mild restrictions for social interaction.

(*Id.* (citations omitted).) The ALJ had also discussed the largely unremarkable findings in Niemczyk's mental health treatment records, which he found consistent with a conclusion that Niemczyk had no more than mild limitations in any area of mental functioning. (Tr. 18.)

The plaintiff argues that the ALJ's rejection of particular findings by the state agency psychological consultant, without relying on a conflicting medical opinion that specifically matches the ALJ's ultimate finding, amounts to the ALJ erroneously elevating his own lay interpretation of the medical evidence over Dr. Vizza's professional opinions. But this

argument is contrary to the controlling regulations and

> pertinent Third Circuit precedent. Nothing in the
> Social Security Act or governing regulations requires
> the ALJ to obtain matching "opinion" evidence in order
> to fashion a claimant's RFC. The controlling
> regulations are explicit that the formulation of a
> claimant's RFC from the broad record before him is an
> *administrative* responsibility for the ALJ, not a
> treating or other physician.

*Myers*, 373 F. Supp. 3d at 538 (emphasis added). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 Fed. App'x 6, 11 (3d Cir. 2006). "An ALJ, therefore, is not limited to choosing between competing opinions in the record, and may instead develop his own." *Myers*, 373 F. Supp. 3d at 538. Here, the ALJ provided extensive articulation of how the evidence concerning the claimant's fairly robust social activities contradicted Dr. Vizza's finding that his ability to interact with others was moderately limited.

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's mental limitations, including the medical opinions of the state agency psychological consultant, Dr. Vizza, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### b. State Agency Medical Consultant Opinions

The prior administrative findings also included the opinions of a state agency medical consultant, Lawrence Schaffzin, M.D., who had found the claimant capable of performing light work with some postural limitations. Based on his review of Niemczyk's medical records, Dr. Schaffzin found that Niemczyk was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Schaffzin found that Niemczyk was capable of standing or walking for a total of 2 hours and sitting for a total of about 6 hours in an 8-hour workday. Dr. Schaffzin found that Niemczyk's functional capacity included various postural limitations, including no climbing of ladders, ropes, or scaffolds, no crawling, "limited" use of his right lower extremity to push or pull foot controls,[4] and no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, or crouching. (Tr. 55–57.)

In evaluating Dr. Schaffzin's opinions, the ALJ stated:

> I find the limitations in these opinions that would erode a full range of light exertion to be unpersuasive. These limitations are not supported by all the evidence now in the record and they are not consistent with all the evidence now in the record, particularly the evidence . . . which shows that the claimant has a very

---

[4] Dr. Schaffzin's opinion did not provide a more specific rating.

active life that includes extensive travel and hunting.

(Tr. 23.) The ALJ had previously articulated the evidence regarding

Niemczyk's "active life":

> The claimant's activity level is entirely inconsistent
> with a finding of disability. In a Function Report, the
> claimant stated that he is able to perform laundry,
> perform light household and barn repairs, mow the
> fields, prepare large meals, and go hunting. He stated
> that he hunts as much as he can. He also reported that
> he walks over a mile a day with his dog. In June 2018,
> the claimant was working on a mount for his deer and
> working on the garden. He cared for his chicks. In July
> 2018, the claimant reported that he went on a hog hunt
> with his friends, and prepared chickens for another
> meal. Counseling records from August 2018 indicate
> that the claimant was working on training his dog. He
> described himself as "too busy." Medical records from
> August 2, 2018[,] state that the claimant bought a four-
> wheeler with the intention of using it while camping
> and deer hunting. Medical records from August 30,
> 2018[,] mention that the claimant was busy training
> his dog. On October 10, 2018, it was noted that the
> claimant had made 25 gallons of cider with help from
> friends, and [he] was "too busy to dwell on things" from
> a mental health perspective. In December 2018, the
> claimant reported that he had an enjoyable hunting
> season with his kids. On March 20, 2019, it was noted
> that the claimant was attending his children's sporting
> events and training his dog. In April 2019, he helped
> his mother move items around the house. In June 2019,
> the claimant stated he cleans, does laundry, goes
> shopping, and engages in childcare. Medical records
> from July 19, 2019[,] state that the claimant was
> planning to take his daughter fishing in Ohio.
> Information in medical records from September 25,

2019[,] shows that the claimant had been driving thousands of miles in the past year on various trips. On September 25, 2019, it was noted that the claimant just got back from antelope hunting in Montana with a friend. The same records state that the claimant was planning to go elk hunting in November 2019. The claimant testified that he gets together on a weekly basis with a group of friends to have dinner and smoke cigars. He also testified that he killed deer during the recent hunting season and was involved in dragging the deer to his truck. Such a high level of functioning is not consistent with a finding of total disability.

(Tr. 21–22 (citations omitted).) The ALJ had also discussed the largely unremarkable physical examination findings in Niemczyk's medical records, which he found consistent with a conclusion that Niemczyk could perform light work. (Tr. 21.)

Here, as with Dr. Vizza's opinion, the plaintiff argues that the ALJ's rejection of particular findings by the state agency medical consultant, without relying on a conflicting medical opinion that specifically matches the ALJ's ultimate finding, amounts to the ALJ erroneously elevating his own lay interpretation of the medical evidence over Dr. Schaffzin's professional opinion. For the very same reasons as discussed above with respect to Dr. Vizza's opinions, we find no error with respect to the ALJ's assessment of Dr. Shaffzin's opinions. The ALJ provided an exhaustive articulation of how the evidence concerning the claimant's very active

lifestyle contradicted Dr. Shaffzin's findings with respect to postural limitations. *See Titterington*, 174 Fed. App'x at 11; *Myers*, 373 F. Supp. 3d at 538.

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical limitations, including the medical opinions of the state agency medical consultant, Dr. Shaffzin, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. Treating Orthopedic Surgeon Opinion

Niemczyk underwent hip surgery on April 2, 2018. His treating orthopedic surgeon was Jeffrey Alwine, D.O. The medical record contains several insurance-related forms completed by Dr. Alwine, in which this treating physician initially opined that Niemczyk should "stay out of work" until he reached the 6-month mark post-surgery (Tr. 334), and later that Niemczyk was thereafter "unfit for mechanic work" (Tr. 331, 333). The ALJ found these opinions "unpersuasive," explaining that they "address the claimant's ability to perform his past work as a mechanic and truck driver, not all jobs in the national economy," and they were "not consistent with all the evidence outlined in this decision regarding

the claimant's activities of daily living," referencing the same exhaustive articulation of Niemczyk's active lifestyle discussed above. (Tr. 23.) With respect to the first observation—suggesting that Dr. Alwine's opinion was simply not relevant to the step-five question of whether Niemczyk was capable of performing other work—we agree that the particular opinion provided by Dr. Alwine was immaterial to whether the claimant was totally disabled. Moreover, we note that the doctor's statements that Niemczyk was "unfit for mechanic work" was "inherently neither valuable nor persuasive" under the applicable regulations, which expressly and exclusively reserve to the Commissioner (or the ALJ as her designee) the ultimate issue of whether the claimant is disabled.[5] *See* 20 C.F.R. § 404.1520b(c)(3); *see also Knittle*, 2021 WL 5918706, at *6.

---

[5] The plaintiff suggests in his brief that the ALJ failed to evaluate Dr. Alwine's opinions under the new legal standards set forth in 20 C.F.R. § 404.1520c. But the plaintiff is mistaken. Although the ALJ's decision does not mention Dr. Alwine by name, the ALJ discussed medical opinions set forth in "[v]arious insurance-related documents," which are those of Dr. Alwine, who completed these forms. (Tr. 23.) In any event, as statements on issues reserved to the Commissioner, the ALJ was under no obligation to discuss these statements by Dr. Alwine at all under the new regulations. *See* 20 C.F.R. § 404.1520(b)(c) ("Because the evidence listed in paragraph[] . . . (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled . . . , we will not provide any analysis about how we considered such evidence in our determination or decision . . . .").

Accordingly, we find the ALJ's evaluation of the opinion of treating orthopedic surgeon Dr. Alwine is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. *Examining Physician Opinion*

On June 6, 2019, Niemczyk was seen and examined by a consultative examining physician, Ahmed Kneifati, M.D. On examination, Dr. Kneifati observed that Niemczyk walked with a mild limp with short swing phase right leg, he walked with less of a limp when using a cane, he could walk on his heels and toes without difficulty, he was limited to 60 degrees in squatting, he exhibited normal stance, he needed no help changing clothes or getting on and off the exam table, and he was able to rise from a chair without difficulty. Dr. Kneifati found no scoliosis, kyphosis, or abnormality in the thoracic spine, straight-leg raise was negative bilaterally both seated and supine, he observed no evident joint deformity, the joints were stable, some tenderness in the lateral right hip, but no redness, heat, or effusion. Dr. Kneifati noted 5/5 strength in all extremities. Dr. Kneifati also completed an agency form report on Niemczyk's ability to do work-related activities. Dr. Kneifait opined that Niemczyk was capable of lifting or carrying up to 10 pounds

frequently and 20 pounds occasionally. Dr. Kneifati found that Niemczyk was capable of sitting up to 4 hours in an 8-hour workday, standing up to 3 hours in an 8-hour workday, and walking up to 2 hours in an 8-hour workday. The doctor opined that Niemczyk required a cane to ambulate any further than 10 feet. Dr. Kneifati found that Niemczyk was limited to no more than frequent (1/3 to 2/3 of the time) use of his right foot to operate foot controls, but no limitations to the use of his left foot or to the use of either hand to reach, handle, finger, feel, push or pull. Dr. Kneifati opined that Niemczyk was limited to only occasional climbing of ladders or scaffolds, balancing, stooping, kneeling, or crouching, and no more than frequent crawling or climbing of stairs or ramps. Dr. Kneifati found that Niemczyk was subject to certain environmental limitations, including only occasional exposure to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity or wetness, extreme cold, or extreme heat. (Tr. 624–37.)

Reviewing Dr. Kneifati's opinions together with those of the state agency medical consultant, Dr. Schaffzin, the ALJ found "the limitations in these opinions that would erode a full range of light exertion to be unpersuasive." (Tr. 23.) Although he mentions Dr. Kneifati in passing in

his brief, the plaintiff articulates no specific challenge to the ALJ's evaluation of Dr. Kneifati's opinion. But, nevertheless, for the same reasons set forth above with respect to Dr. Shaffzin's opinions, we find the ALJ's evaluation of the opinion of examining physician Dr. Kneifati is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 4. Treating Psychiatrist Opinion

On December 10, 2019, Niemczyk's treating psychiatrist, Martha E. Tymeson, M.D., provided a medical source statement in support of his application for disability benefits. Dr. Tymeson noted that Niemczyk regularly treated with a therapist in her office, with less frequent but still regular visits for medication management. She noted that Niemczyk had a primary diagnosis of combat-related chronic PTSD. She competed a checkbox form describing Niemczyk's signs and symptoms, and a checkbox form providing her assessment of his mental abilities and aptitudes required to do work-related activities on a day-to-day basis in a regular work setting. She opined that he was unable to satisfactorily perform the following activities independently, appropriately, effectively, and on a sustained basis in a regular work setting: maintain attention

for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors;[6] get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; interact appropriately with the general public; travel in unfamiliar place; or use public transportation.[7] Dr. Tymeson opined that, on average, Niemczyk's mental impairments or treatment would cause him to be absent from work more than four days per month. (Tr. 984–86.)

Reviewing Dr. Tymeson's opinions together with those of the state agency psychological consultant, Dr. Vizza, the ALJ found them

---

[6] We note that Dr. Tymeson placed *three* checkmarks in this box, apparently to underscore this particular finding, but we further note that she *did not* mark the more restrictive "no useful ability to function" box for this ability or aptitude. (Tr. 985.)

[7] The form listed several other abilities or aptitudes as well, but Niemczyk was described as either unlimited or "limited but satisfactory" in each of these other categories.

unpersuasive because "[t]he various signs and symptoms cited by Dr. Tymeson to support her opinion are not consistently shown in the underlying treatment records," and because "these opinions are inconsistent with the record as a whole." (Tr. 19.) In particular, the ALJ referenced the same evidence discussed above in connection with Dr. Vizza's opinion. (*Id.*) The ALJ had also discussed the largely unremarkable findings in Niemczyk's mental health treatment records, which he found consistent with a conclusion that Niemczyk had no more than mild limitations in any area of mental functioning. (Tr. 18.)

The plaintiff presents the same argument with respect to both Dr. Tymeson's opinions that he presented with respect to Dr. Vizza's opinions—that the ALJ erroneously elevated his own lay interpretation of the medical evidence over Dr. Tymeson's professional opinions—and for the same reasons articulated above, we find this argument unpersuasive.

The plaintiff also argues that the ALJ's evaluation of Dr. Tymeson's opinions was lacking because it failed to "completely cite" all of the claimant's mental heath treatment records, including numerous psychotherapy treatment notes documenting Niemczyk's mental health

conditions. But "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004); *see also Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") (citation omitted); *Kupiec v. Kijakazi*, No. 20-1240, 2021 WL 5015775, at *2 (W.D. Pa. Oct. 28, 2021) ("An ALJ is not required to discuss or cite every piece of evidence in the record."). It is only necessary that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, which it does here. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Moreover, in reviewing the treatment findings identified by the plaintiff, we find them entirely consistent with the ALJ's ultimate determinations; while these findings certainly indicate the presence of mental health conditions, which were clearly acknowledged by the ALJ, they do not *compel* a conclusion that Niemczyk had mental impairments that significantly limited his ability to work.

Accordingly, we find the ALJ's evaluation of the opinion of treating psychiatrist Dr. Tymeson is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Niemczyk was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: March 25, 2022                    ***s/Joseph F. Saporito, Jr.***
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge